| | |
|---|---|
| REV TECH LABS, LLC, AND CAROLINAS FINTECH VENTURES, LP, <br><br> Plaintiffs, <br><br> v. <br><br> CIRRUS SECURE, INC., FRIDESWIDE SQUARE, INC., AND DAVID BROOKS, <br><br> Defendants. | <u>MEMORANDUM & ORDER</u> |

**THIS MATTER** is before the Court on Plaintiffs' Motion for Summary Judgment as to Defendants' Amended Counterclaims. (Doc. No. 40). For the reasons explained below, the Court will grant Plaintiffs' motion.

## I.  BACKGROUND

Plaintiffs Rev Tech Labs, LLC, d/b/a Queen City Fin Tech ("Rev Tech") and Carolinas Fintech Ventures, LP, d/b/a CFV Ventures ("CFV") jointly own, host, and run a business accelerator program (the "Program") for financial technology ("fintech") companies. (Doc. Nos. 11 ¶ 4; 41-16 at 2). The Program consists of a twelve-week onsite program[1] plus nine months of continued support. (Doc. No. 41-16 at 2).  The Program makes various products and services available to participants, including a curated curriculum, guidance on fundraising strategy, and advisory board

---

[1] A majority of the 2020 "onsite" Program was conducted virtually. *See* (Doc. No. 43-2 ¶ 11).

meetings. *Id.*

At all relevant times, Defendant David Brooks was the President and CEO of Defendant Frideswide Square, Inc., a Colorado corporation that owned a software program called "Cirrus" (the "Cirrus Software"). (Doc. Nos. 43-2; Brooks Second Decl. ¶ 2; 41-17 at 4; 11-11 at 2). The Cirrus Software provides a "secure document collection portal with workflow automation" that "assist[s] banks and other financial institutions in keeping track of various materials needed to complete loans." (Doc. Nos. 43-2 ¶ 2; 41-17 at 4). Defendant Brooks applied for entry into the Spring 2020 Program and was "eager to have some company associated with the [Cirrus] Software participate in the Accelerator Program." (Doc. No. 43-2 ¶¶ 2, 3, 5). Defendant Brooks and the Program director referred to his company as "Cirrus" or "Cirrus Secure" during the application process. *See* (Doc. No. 41-6 at 2, 4, 8).

Plaintiffs offered Defendant Brooks a spot in the Program in early 2020. (Doc. No. 43-2 ¶ 7). As a result, Defendant Brooks was to issue a Simple Agreement for Future Equity ("SAFE") that granted certain shares of his company's capital stock to Plaintiff CFV in exchange for an investment of $40,000. (Doc. Nos. 41-16 at 8; 43-2 ¶ 7). Defendant Brooks was also to execute a Participant Agreement that set forth additional terms, conditions, and covenants in connection with his company's participation in the Program. (Doc. Nos. 43-2 ¶ 7; 41-16 at 2). The parties refer to the Participant Agreement and SAFE collectively as the "Accelerator Agreements." (Doc. Nos. 21 ¶ 18; 41 at 4).

On January 16, 2020, Plaintiffs emailed Defendant Brooks draft copies of the

Accelerator Agreements. (Doc. No. 41-9 at 2). The draft Participant Agreement listed the company name as "Cirrus Secure." *Id.* at 3. On January 24, 2020, Defendant Brooks sent the edited Accelerator Agreements back to Plaintiffs, in which he changed "Cirrus Secure" to "Cirrus Secure, Inc., a Delaware corporation." (Doc. Nos. 41-10 at 2, 4, 11; 43-2 ¶ 7). That same day, Defendant Brooks filed the State of Delaware Certificate of Incorporation for Defendant Cirrus Secure, Inc. (Doc. No. 41-12 at 2). The parties executed the edited Accelerator Agreements on February 5, 2020. (Doc. No. 41-16 at 2, 16). The twelve-week portion of the Program began in early March 2020 and completed in June 2020. *See* (Doc. No. 43-2 ¶¶ 10, 21). The Program's continued support pursuant to the Participant Agreement ended in March 2021. *See* (Doc. No. 41-16 at 2).

In August 2022, Defendant Brooks ran into a Plaintiff CFV representative at a conference. (Doc. Nos. 41-28 at 3–4; 43-2 ¶ 22). The two discussed the status of Cirrus Secure, Inc. (Doc. No. 43-2 ¶ 22). In November 2022, the managing partner of Plaintiff CFV reached out to Defendant Brooks regarding the interaction and the execution of the Accelerator Agreements. *See* (Doc. No. 41-28 at 2–4). The partner sought clarification on the entity that signed the Accelerator Agreements. *Id.*

On August 16, 2024, Plaintiffs filed suit against Defendants Cirrus Secure, Inc., Frideswide Square, Inc., and David Brooks. (Doc. No. 1). Plaintiffs claim Defendant Brooks knowingly and intentionally defrauded Plaintiffs and misled Plaintiffs into believing they were investing in the entity that operated the Cirrus Software's business—not "a shell company with no assets, employees, customers, or

other viable business operations." *Id.* ¶ 1. Plaintiffs brought claims for violations of federal and state securities law, common law fraud, fraudulent concealment, conspiracy to defraud, obtaining property by false pretenses, unjust enrichment, and unfair and deceptive trade practices. *Id.* ¶¶ 77–179. On October 21, 2024, Defendants filed their "Answer & Counterclaim," asserting causes of action for breach of contract and declaratory judgment. (Doc. No. 11). Defendants later amended the counterclaims to assert causes of action for "Breach of Contract/Recoupment" and declaratory judgment. (Doc. No. 21).

The parties filed cross-motions for summary judgment (Doc. Nos. 36, 40), and on March 30, 2026, the Court held a hearing on both motions. The Court ruled from the bench on Defendants' motion for summary judgment, granting Defendants' motion as to Plaintiffs' claims for conspiracy, false pretenses, unjust enrichment, and unfair and deceptive trade practices, and denying Defendants' motion as to the remaining claims sounding in fraud. (Oral Order entered on March 30, 2026). The Court declined to issue an oral ruling on Plaintiffs' motion for summary judgment as to Defendants' counterclaims. Plaintiffs' motion is ripe for disposition.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v. 8.929 Acres of Land in Arlington Cnty.*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Mod. Mosaic, LTD v. Turner*

*Constr. Co.*, 946 F.3d 201, 206 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *8.929 Acres of Land*, 36 F.4th at 252 (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (when the nonmoving party "has failed to make a sufficient showing on an essential element of [his] claim with respect to which [he] has the burden of proof," summary judgment is warranted); *see also United States ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 178 (4th Cir. 2022) (same). "If the movant satisfies his initial burden to demonstrate 'an absence of evidence to support the nonmoving party's case,' the burden shifts to the nonmovant to 'present specific facts showing that there is a genuine issue for trial.'" *8.929 Acres of Land*, 36 F.4th at 252 (quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015)). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021) (emphasis omitted) (quoting *Anderson*, 477 U.S. at 247–48). Rather, the nonmoving party must establish that a material fact is

genuinely disputed by, *inter alia*, "citing to particular parts of the materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and cannot rely only on "conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *8.929 Acres of Land*, 36 F.4th at 252 (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)).

Still, summary judgment is not intended to be a substitute for a trial of the facts. *See Anderson*, 477 U.S. at 255. In determining if summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (citation modified). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015) (quoting 10A Wright & Miller's Federal Practice & Procedure § 2728 (3d ed. 1998)).

Overall, the relevant inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III.  DISCUSSION

Defendants bring counterclaims for "Breach of Contract/Recoupment" and for declaratory judgment. (Doc. No. 21 ¶¶ 126–147). Plaintiffs move for summary

judgment on both counterclaims.[2] (Doc. No. 40 ¶ 4). For the reasons explained below, the Court will grant Plaintiffs' motion.

### A. "Breach of Contract/Recoupment"

Defendants originally brought a counterclaim for breach of contract, seeking the remedy of rescission. (Doc. No. 11 ¶¶ 119–129). Plaintiffs filed a motion to dismiss, raising a statute of limitations issue as to the counterclaim. (Doc. Nos. 15; 16 at 1–2, 7–10). Defendants then filed amended counterclaims. (Doc. No. 21). Defendants amended the breach of contract counterclaim to assert a counterclaim for "Breach of Contract/Recoupment." *Id.* at 21. Defendants still seek rescission through the amended counterclaim. *Id.* ¶¶ 137, 139.

The North Carolina Supreme Court has defined recoupment as "a defen[s]e by which a defendant, when sued for a debt or damages, might recoup the damages suffered by himself from any breach by the plaintiff of the same contract." *Hurst v. Everett*, 91 N.C. 399, 404–05 (1884) (emphasis omitted). Recoupment has also been defined by other North Carolina courts as a "[r]eduction of a plaintiff's damages because of a demand by the defendant arising out of the same transaction." *Cent. Carolina Surgical Eye Assocs., P.A., v. Matthews*, No. 21 CVS 3201, 2022 WL 798335, at *12 (N.C. Super. Ct. Mar. 16, 2022) (emphasis omitted) (quoting *In re Se. Eye Ctr.-*

---

[2] Plaintiffs also move for summary judgment on Plaintiffs' first, second, and fourth affirmative defenses to Defendants' amended counterclaims. (Doc. Nos. 25 at 18–19; 40 ¶ 4). The Court addresses Plaintiffs' first and second affirmative defenses through the issuance of this Order. As to their fourth affirmative defense, Plaintiffs argue that the counterclaims are barred by the doctrine of laches. (Doc. No. 25 at 19). However, Plaintiffs failed to make a substantive laches argument. *See generally* (Doc. No. 41). Therefore, the Court will not address it at length. The Court does not find the doctrine of laches applies based on the evidence before the Court.

*Pending Matters*, No. 15 CVS 1648, 2016 WL 4163928, at *7 (N.C. Super. Ct. July 22, 2016)). A defendant may bring recoupment as a defense or a counterclaim. *Crescent Foods, Inc. v. Evason Pharmacies, Inc.*, No. 15 CVS 1852, 2016 WL 6270257, at *6 (N.C. Super. Ct. Oct. 5, 2016) ("North Carolina has long recognized recoupment as a valid counterclaim under the proper circumstances.").

"Rescission is an equitable contract remedy that . . . treats both parties as if there were no contract." *Morris v. Scenera Rsch., LLC*, 788 S.E.2d 154, 161 (N.C. 2016). "Rescission is not merely a termination of contractual obligation. It is abrogation or undoing of it from the beginning." *Id.* "A party may pursue rescission only if 'there is a material breach of the contract going to the very heart of the instrument.'" *Id.* In sum, "[a] party may pursue rescission only when a material breach occurs *and* all legal remedies fall[] short of compensating the injured party for its loss." *Id.*

Defendants' amended counterclaim is certainly creative. However, it amounts to an attempt to Frankenstein three legal doctrines—breach of contract, recoupment, and rescission—into a counterclaim that, in essence, seeks to revive a breach of contract claim that had been marked for death. As argued in Plaintiffs' initial motion to dismiss, any claim for breach of contract would have been barred by the statute of limitations.[3] (Doc. No. 16 at 1–2, 7–10). So Defendants instead attempt to use

---

[3] To the extent Defendants seek any claim for breach of contract, that claim is time-barred by the applicable statute of limitations. Under North Carolina law, the statute of limitations for breach of contract is three years. N.C. Gen. Stat. §§ 1-46, 1-52. The statute of limitations for breach of contract begins to run once a plaintiff "has knowledge that a wrong has been inflicted upon him" or once the "injury becomes apparent" or "should reasonably become apparent." *Chisum v. Campagna*, 855 S.E.2d

recoupment, which they argue is not subject to that statute of limitations, to get rescission—a remedy that assumes a material breach of contract. (Doc. Nos. 21 ¶¶ 137, 139; 43 at 12).

Ultimately, Defendants' counterclaim fails because the Court cannot grant rescission as a "method of recoupment" under North Carolina law as argued by Defendants. (Doc. No. 21 ¶ 4). Instead, recoupment, by definition, involves the affirmative relief of money damages. *Hurst*, 91 N.C. at 404–05; *Cent. Carolina Surgical Eye Assocs., P.A.*, 2022 WL 798335, at *12. Defendants have not cited any binding case law where a party seeks rescission through a recoupment claim, nor is the Court aware of any. To support their argument that rescission is a remedy for recoupment, (Doc. No. 43 at 11), Defendants rely on *Fields v. Brown*, a case where the plaintiff sued to recover possession of a bay mare mule (named Nell). *See* 76 S.E. 8, 9 (N.C. 1912).[4] The Court disagrees. *Fields* discusses remedies a party may have when that party has been fraudulently induced to enter into a contract. *Id.* at 9–10. And if that party is "sued upon the contract, he may set up the fraud as a defense, or

---

173, 188 (N.C. 2021). Defendants allege "Plaintiffs breached the Accelerator Agreements by failing to abide by and deliver the various items that were identified and promised in the Accelerator Agreements." (Doc. No. 21 ¶ 133). But the injury Defendants complain of would have been apparent more than three years prior to Defendants filing their counterclaims. Under the Participant Agreement, Plaintiffs were to provide services for one year, that is, from March 2020 through March 2021. (Doc. No. 41-16 at 2). Defendants would have, therefore, known of any breach by March 2021—more than 3 years prior to Defendants' filing of their amended counterclaims on November 26, 2024. (Doc. No. 21).

[4] Defendants also cite two cases that do not apply North Carolina law—*Quechee Lakes Corp. v. Terrosi*, 451 A.2d 1080, 1081–83 (Vt. 1982); and *Allie v. Ionata*, 503 So.2d 1237, 1239–42 (Fla. 1987). The Court does not find these cases persuasive.

as a basis of a claim for damages by way of recoupment or counterclaim." *Id.* at 10. *Fields* goes on to say that a "defrauded party may be entitled to the equitable remed[y] of rescission," *id.*, but the case far from holds that rescission is available as a remedy for a recoupment counterclaim. Instead, the case specifically lists recoupment as a claim for damages, *id.*, which Defendants do not seek through their recoupment counterclaim. (Doc. No. 21 ¶¶ 126–140). For these reasons, the "Breach of Contract/Recoupment" counterclaim fails, and summary judgment is granted in favor of Plaintiffs on Defendants' counterclaim.[5]

## B. Declaratory Judgment

Defendants also assert a counterclaim for declaratory judgment. (Doc. No. 21 ¶¶ 141–47). Specifically, Defendants ask the Court to:

> declare the rights and responsibilities of the parties that are owed and expected among and between the parties arising from the Accelerator Agreements, including but not limited to: [1] the proper interpretation of the Accelerator Agreements; [2] whether Plaintiffs reasonably relied on any statements from [Defendant] Brooks prior to entering into the Accelerator Agreements; and [3] whether Plaintiffs exercised reasonable diligence in relation to the statements they claim were misleading.

(Doc. No. 21 ¶ 147). It is unclear from the amended counterclaim whether Defendants seek declaratory relief pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, or the North Carolina Declaratory Judgment Act, N.C. Gen. Stat. § 1-

---

[5] Defendants contend that even if Plaintiffs' motion for summary judgment is granted as to the "Breach of Contract/Recoupment" counterclaim, "declaratory judgment would still be needed to address whether Defendants' affirmative defense of rescission is viable." (Doc. No. 43 at 20–21). The Court takes no position on that issue at this time. Defendants may argue their affirmative defenses at trial.

253 *et seq.* Regardless, "[f]ederal standards guide the inquiry as to the propriety of declaratory relief in federal courts, even when the case is under the court's diversity jurisdiction." *White v. Nat'l Union Fire Co.*, 913 F.2d 165, 167 (4th Cir. 1990). For the reasons explained below, the Court will grant summary judgment as to Defendants' declaratory judgment counterclaim.

Under the federal Declaratory Judgment Act, a district court in a case or controversy otherwise within its jurisdiction, "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Over the years, [the Fourth Circuit] has enumerated several factors that the district court should consider in deciding whether to dismiss a declaratory judgment action." *Ellis v. La.-Pac. Corp.*, 699 F.3d 778, 788 (4th Cir. 2012). Factors enumerated by the Fourth Circuit, in pertinent part, include, "that the declaratory relief sought: (1) will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (citation modified).[6]

As Defendants conceded in their brief, whether Plaintiffs reasonably relied on statements from Defendant Brooks or exercised reasonable diligence is duplicative

---

[6] Other factors the Fourth Circuit has "articulated to guide a district court in determining whether to exercise jurisdiction over a declaratory judgment action" include "federalism, efficiency, and comity" as well as "whether the declaratory judgment action is being used merely as a device for procedural fencing." *Aetna Cas. & Sur. Co.*, 139 F.3d at 422. Consideration of these other factors does not alter the Court's conclusion.

11

because Plaintiffs' fraud claims are proceeding to trial. (Doc. No. 43 at 20). These issues will be decided in the normal course of litigation, so "the declaratory judgment claim serves no independent, useful purpose and will not help terminate the uncertainty giving rise to this proceeding." *We CBD, LLC v. Planet Nine Priv. Air, LLC*, No. 3:21-cv-00352, 2022 WL 2334984, at \*4 (W.D.N.C. June 28, 2022). Additionally, the Court has granted summary judgment as to the "Breach of Contract/Recoupment" counterclaim, so interpreting the Accelerator Agreements would serve no useful purpose. *See Hanback v. DRHI, Inc.*, 647 F. App'x 207, 209–10 (4th Cir. 2016) (*per curiam*) (concluding a declaratory judgment would serve no useful purpose in clarifying and settling the legal relations at issue when the district court properly dismissed the breach of contract claim). Accordingly, the Court will grant summary judgment in favor of Plaintiffs on Defendants' counterclaim for declaratory judgment.

## IV.   CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. No. 40) is **GRANTED**. This case will proceed toward trial on the merits in the absence of a voluntary resolution among the parties.

**SO ORDERED.**

Signed: July 2, 2026

Matthew E. Orso
United States District Judge