UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:24-CV-00752-MEO-MTO

| | |
|---|---|
| **CAROLINAS FINTECH VENTURES, LP, AND REV TECH LABS, LLC,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**FRIDESWIDE SQUARE, INC., CIRRUS SECURE, INC., AND DAVID BROOKS,**<br><br>**Defendants.** | **MEMORANDUM & ORDER** |

**THIS MATTER** is before the Court on Plaintiffs' Motions in Limine (Doc. No. 76) and Defendants' Motions in Limine (Doc. No. 85). For the reasons set forth below, the Court will grant in part and deny in part the motions.[1]

## I. LEGAL STANDARD

Under Federal Rule of Evidence ("FRE") 402, all "[r]elevant evidence is admissible unless" specifically prohibited by the Constitution, a federal statute, or another evidentiary rule. Fed. R. Evid. 402. FRE 401 defines relevant evidence as having "any tendency to make a fact [of consequence to the determination of the case] more or less probable than it would be without the evidence." Fed. R. Evid. 401. Even so, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.

[1] The Court will address the parties' motions to strike experts by separate order.

Prejudice refers to evidence that has an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Queen*, 132 F.3d 991, 994 (4th Cir. 1997) (citations omitted). The analysis under Rule 403 "entails a dual inquiry." *Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130, 1133 (4th Cir. 1988). First, the court must "look to the probative value of the evidence on the question" sought to be proved. *Id.* Second, the court must "examine the possibility that the evidence will cause unfair prejudice to the defendant" or other "harmful consequences." *Id.*

## II. DISCUSSION

### A. Plaintiffs' Motions in Limine

#### *1. Evidence or References Concerning Prior Litigation Involving Daniel Roselli*

Plaintiffs move to exclude any evidence or reference to prior unrelated litigation involving Daniel Roselli, arguing that 7- to 16-year-old bankruptcy proceedings and trade-secret litigation are entirely irrelevant, highly prejudicial, and inadmissible under Federal Rules of Evidence 401, 402, and 403.

Defendants argue this evidence is fully admissible under Federal Rule of Evidence 608(b) to impeach Mr. Roselli's character for truthfulness. Defendants emphasize Plaintiffs' fraud theory depends substantially on Mr. Roselli's account of disputed oral statements, thus putting Mr. Roselli's credibility directly at issue. The jury verdict finding Mr. Roselli misappropriated trade secrets and engaged in deceptive conduct, alongside a bankruptcy court finding that he demonstrated a "skewed notion of right and wrong," constitute adjudicated acts of fraud and

dishonesty that are directly probative of his credibility under Fourth Circuit precedent, *United States v. Leake*. *See* 642 F.2d 715 (4th Cir. 1981).

Rule 608(b) allows narrow cross-examination on specific instances of conduct probative of truthfulness or untruthfulness. The Court should consider several factors when determining the scope of such cross-examination: "the importance of the testimony to the [offering party's] case, the relevance of the conduct to the witness's truthfulness, and the danger of prejudice, confusion, or delay raised by evidence sought to be adduced." *Leake*, 642 F.2d 715, 719 (4th Cir. 1981) (citing McCormick on Evidence § 42 (2d ed. 1972) and Fed. R. Evid. 403 and 611). Further, the Court has broad discretion in determining what matters may be raised on cross-examination. *Id.*

As to any documentary evidence, the Court will grant the exclusion of such evidence because Rule 608(b) prohibits extrinsic evidence, and Defendants assert that they will not introduce such evidence and will not use it for anything other than phrasing questions.

As for the bankruptcy court's statements, the Court will grant that motion under Rule 403. The bankruptcy court's commentary that Mr. Roselli and his wife demonstrated a "skewed notion of right and wrong" is found within the bankruptcy court's order denying Mr. Roselli's motion to disqualify and granting the opposing party's motion for sanctions. (Doc. No. 83-4). The judicial commentary regarding Mr. Roselli's moral compass, without further information as to its foundation, is unrelated to this litigation and carries an extreme risk of unfair prejudice and jury confusion.

Furthermore, inclusion of this statement invites a mini trial to litigate the underlying merits of the statement. Accordingly, the Court will exclude any questioning as to this statement or other matters related to the bankruptcy proceeding under Rule 403.

Finally, the Court will deny without prejudice Plaintiffs' motion to exclude questioning about Mr. Roselli's trade-secret litigation. This evidence is relevant under Rule 401 because Mr. Roselli's credibility is squarely at issue; much of the disputed testimony turns on his recollection of Mr. Brooks' statements. The findings in the trade-secret litigation could bear on Mr. Roselli's truthfulness and are not merely unsubstantiated allegations. The case does date back roughly 16 years. But unlike Rule 609, Rule 608(b) carries no built-in time restriction. And although "common sense dictates that temporal remoteness reduces the probative value of prior conduct" under Rule 403, *United States v. Keystone*, No. 2:18CR00013, 2019 WL 3958131, at *2 (W.D. Va. Aug. 22, 2019) (quoting *United States v. Asher*, 910 F.3d 854, 861 (6th Cir. 2018)), remoteness alone does not render conduct that bears directly upon truthfulness inadmissible. *See, e.g., Scott v. City of Tulsa, Oklahoma*, 797 F. Supp. 3d 1243, 1259 (N.D. Okla. 2025) (Gelpí, J., sitting by designation) (allowing cross-examination about 15-year-old cheating allegations because "such evidence may still be probative of [the witness's] character for truthfulness and [the witness] may still be able to explain the incident"); *see also Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1114 (10th Cir. 2001) (finding no abuse of discretion where district court permitted cross-examination on 20-year-old disciplinary proceedings).

Considering the factors outlined in *Leake* and Rule 403, the Court finds that although the alleged prior act is remote in time, the probative value of this evidence as to truthfulness is not substantially outweighed by the danger of unfair prejudice or confusion of the issues. *See, e.g., McClenny v. Meadows*, No. 7:18-CV-221, 2020 WL 7014593, at *5 (W.D. Va. Nov. 26, 2020) ("Specific act evidence must also pass muster under FRE 403, which considers, among other things, whether the alleged prior act is too remote in time."). Defendants may inquire into the conduct on cross-examination of Mr. Roselli, but they may not introduce extrinsic evidence of it, including the verdict, judgment, or other records from the trade-secret litigation. Defendants must also have a good-faith basis for each question. Plaintiffs may renew their objection at trial to specific lines of questioning that exceed these limits. Accordingly, Plaintiffs motion is **GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART**. Defendants are precluded from introducing evidence of, or referring to, Mr. Roselli's prior bankruptcy proceedings. Plaintiffs' motion is denied without prejudice as to Mr. Roselli's trade-secret litigation.

### *2. Evidence Concerning Mr. Roselli's or Mr. Clarkson's Decisions to Defer Compensation During the COVID-19 pandemic.*

Plaintiffs seek to preclude evidence regarding Mr. Roselli's and Nathaniel Clarkson's decisions to defer compensation during the COVID-19 crisis. Plaintiffs assert that the COVID-19 compensation deferrals arose from pandemic-related cash-flow challenges that have since been resolved. Plaintiffs assert that because those deferred amounts were subsequently paid in full, the evidence possesses zero probative value, wastes time, risks unfair prejudice, and will confuse the jury.

Defendants contend that evidence regarding Mr. Roselli's and Clarkson's COVID-era salary deferrals is highly relevant to establishing their affirmative defense of equitable rescission[2] and evaluating the true quality of the Accelerator Program. Defendants assert that the severe cash constraints and internal salary suspensions corroborate their position that Plaintiffs suffered cash shortfalls, altered operations, and failed to deliver the Accelerator services as promised. And given that the amount deferred represented up to 25% of the entire annual salaries for those individuals putting on the program, such evidence is relevant, at a minimum, to the quality of the Accelerator Program at that time.

Plaintiffs' motion is **DENIED**. The Court will allow evidence of COVID-19 cash restraints and deferred compensation occurring during the timeframe of the Accelerator Program because such evidence directly bears on program quality, value, performance, and, if available, Defendants' equitable rescission defense. The Court finds that any unfair prejudice does not substantially outweigh the probative value of this evidence. The Court expressly notes that it is not deciding at this time on the legal availability of Defendants' rescission defense, and it will not exclude evidence at this stage based on the potential unavailability of that defense.

*3. Arguments and Evidence Concerning Defendants' Dismissed Breach-of-Contract Counterclaims*

Plaintiffs request the exclusion of all arguments and evidence relating to Defendants' dismissed counterclaims for breach of contract, emphasizing that the Court's summary judgment order (Doc. No. 60) rendered those theories legally

[2] In their reply, Plaintiffs dispute the availability of a rescission defense.

defunct and that presenting them before the jury would be improper and prejudicial under Rules 401, 402, and 403.

Defendants confirm they will not ask the jury to award relief on any dismissed counterclaim, but they contend that Plaintiffs' request is broader than necessary. Specifically, Defendants maintain that Plaintiffs' factual admissions regarding Secretary of State record searches remain binding and directly relevant to issues of reasonable reliance and due diligence, notwithstanding the counterclaims' dismissal. Defendants further argue that Plaintiffs' invocation of the force majeure clause in the Participant Agreement reflects a recognition that COVID-19 materially altered the promised in-person Accelerator Program, making such evidence probative of program value, Plaintiffs' overall damages theory, and Defendants' affirmative defense of equitable rescission, which the Court expressly preserved for trial. Defendants assert that evidence concerning Plaintiffs' alleged failure to deliver promised curriculum, support, contacts, services, space, mentors, and investor access support their affirmative defense of equitable rescission. Finally, Defendants contend that any potential risk of jury confusion regarding dismissed claims can be effectively mitigated through an appropriate jury instruction rather than total exclusion.

The Court will **GRANT IN PART** the motion as to any request for relief on the dismissed counterclaims based on Defendants' explicit assertion that they will not seek such relief at trial. Additionally, the Court's ruling on those counterclaims is excluded. However, the motion is **DENIED WITHOUT PREJUDICE** as to any pleading admissions or evidence of performance that remain relevant to the surviving

claims and affirmative defenses. This includes evidence of Plaintiffs' performance under the agreements, as Defendants' affirmative defense of equitable rescission remains at issue. Plaintiffs retain the right to re-raise their objections at trial if so warranted.

#### 4. *Evidence Concerning Plaintiffs' Compensation Agreements with Counsel*

Plaintiffs move to exclude evidence concerning their compensation agreements with counsel in this matter, maintaining that attorney fee structures have no bearing on any fact of consequence at trial. Defendants make clear in their response that they do not intend to inquire about or introduce evidence regarding Plaintiffs' fee arrangements with counsel, absent any attempt by Plaintiffs to open the door. Accordingly, the motion to exclude evidence concerning Plaintiffs' compensation agreements with counsel is **GRANTED** as uncontested. Nothing in this ruling limits Defendants' ability to introduce such evidence should Plaintiffs open the door.

### B. Defendants' Motions in Limine

#### 1. *Valuation of In-Kind/Non-Cash Benefits Associated with the Accelerator Program*

Defendants first seek to exclude evidence regarding the valuation of "in-kind" program benefits under Rules 401 and 403. Defendants bring separate arguments for each Plaintiff. As to Carolinas Fintech Ventures, LP ("CFV"), Defendants argue that the introduction of in-kind benefits violates the parol evidence rule because that valuation directly contradicts the SAFE's operative, defined term setting the "Purchase Amount" at exactly $40,000. Second, Defendants assert that testimony regarding the program's value is inherently unreliable because CFV's corporate

designee lacks the requisite personal knowledge to testify to the amount with reasonable certainty.

As to Queen City Fintech[3] ("QCF"), Defendants argue QCF is not a party to the SAFE nor has QCF asserted a securities-based claim. Thus, as to QCF, the relevance of the in-kind valuation should only be considered in relation to QCF's common law fraud or fraudulent concealment claims. As to those claims, Defendants assert an in-kind valuation is neither an element nor a measure of damages, rendering it wholly irrelevant. Defendants further contend that Rule 403 independently requires exclusion because permitting QCF to present an inflated in-kind valuation figure would present severe prejudice by creating a misleading and confusing "damages anchor" that is untethered to the true, governing legal measure of damages.

Plaintiffs respond that the value of the Accelerator Program is relevant to both Plaintiffs' claims because the value of the in-kind benefits speaks both to the consideration paid for the security and the amount that would restore Plaintiffs to the position they were in before the fraud. Further, Plaintiffs contend the parol evidence rule does not apply to the integrated Participant Agreement and the SAFE, which is Exhibit A to the Participant Agreement, and that Defendants have previously argued that admission to the Program was consideration for the SAFE. As to the reliability of CFV testimony concerning the value of the program, Plaintiffs contend that Mr. Clarkson has personal knowledge of the benefits provided through the Program and can testify to the value based on that knowledge. Finally, Plaintiffs

---

[3] Plaintiff Rev Tech Labs, LLC, does business as Queen City Fin Tech.

contend that the valuation should not be excluded under Rule 403 because it is highly relevant and probative.

First, the Court finds that the Participant Agreement and the SAFE were executed as part of a single transaction and must be construed together as one agreement. Because the SAFE is part of the parties' written agreement, considering its terms does not implicate the parol evidence rule. The Participant Agreement provides the following:

> **WHEREAS,** the Company has been accepted to, and desires to participate in, QCF's business accelerator program for financial technology ("**Fintech**") companies, which consists of a twelve-week on-site program (the "**On-Site Program**") plus nine (9) months of continued support after the conclusion of the On-Site Program (collectively the "**Program**"); and
>
> **WHEREAS,** concurrently with the execution of this Agreement, the Company is issuing to CFV a Simple Agreement for Future Equity (in substantially the form attached as Exhibit A hereto, the "**SAFE**") in exchange for an investment of $40,000.
>
> **NOW, THEREFORE,** in connection with the Company's participation in the Program and the SAFE issuance and in consideration thereof, the Parties desire to set forth additional terms, conditions and covenants as described in this Agreement.

(Doc. No. 1-3 at 2). The Participant Agreement is signed by Rev Tech Labs (d/b/a QCF), CFV, and Cirrus Secure, Inc. ("Cirrus Secure"). The SAFE, attached to the Participant Agreement, is signed by CFV and Cirrus Secure. The Participant Agreement incorporates the SAFE as an attached exhibit and states that the consideration for the Participant Agreement is "the Company's participation in the Program *and* the SAFE issuance." *Id.* (emphasis added). The SAFE likewise states

that it "is issued in connection with the Company's participation in the business accelerator program." (Doc. No. 1-3 at 8). All this points the Court to the conclusion that the SAFE and the Participant Agreement were executed pursuant to a single transaction. That Rev Tech Labs is not a signatory to the SAFE does not alter this conclusion; CFV and Cirrus Secure are parties to both instruments, and the Participant Agreement expressly makes the SAFE's issuance part of the consideration for the parties' bargain.

As to whether the value of the Program is relevant to any or all of Plaintiffs' claims, the Court observes that Defendants failed to raise or brief any legal challenge regarding the availability or scope of program-value damages prior to filing their motions in limine. Indeed, Defendants neither raised this issue on summary judgment nor adequately briefed it in the current motion. Nevertheless, relevancy under Federal Rule of Evidence 401 sets a low threshold; evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. Here, evidence regarding the valuation of the Accelerator Program directly pertains to the consideration provided in the underlying transaction, which is central to Plaintiffs' claims.

Furthermore, admission of this evidence will not violate Federal Rule of Evidence 403. "Rule 403 establishes an extraordinary remedy to be applied sparingly—favoring admission unless the risk of unfair prejudice is both unjust and substantially greater than the probative worth of the evidence." *United States v. Boyd*, No. 4:24-CR-00935-JD, 2025 WL 4664208, at *3 (D.S.C. Oct. 14, 2025) (citing

*United States v. Miller*, 61 F.4th 426, 429 (4th Cir. 2023)). Thus, the Court will exclude relevant, admissible evidence only when its probative value is substantially outweighed by the danger of unfair prejudice or jury confusion, which the Court does not find here.

Because the program value represents the core in-kind consideration allegedly induced by misrepresentations, its probative value is substantial. Any risk that the jury might improperly consider the $300,000 figure when assessing damages does not meet that standard. To be clear, nothing in this ruling constitutes a legal determination as to which specific damages categories are legally recoverable under which particular claims. The Court will consider issuing a limiting instruction on that issue if the need arises and a party requests it.

Accordingly, the Court will permit testimony regarding the valuation of the Program at this stage. Should Defendants wish to challenge the legal availability or sufficiency of damages as a matter of law, they may reraise their motion at the appropriate time pursuant to Federal Rules of Civil Procedure 50 and 59.

Lastly, the Court finds Defendants' motion to exclude any valuation by CFV representatives premature. Accordingly, the Court will deny without prejudice Defendants' request. However, nothing in this Order prevents Defendants from objecting to a lack of foundation for such testimony at the appropriate time, if so warranted.

For these reasons, Defendants' motion is **DENIED WITHOUT PREJUDICE**, and Plaintiffs may present evidence of program value to establish damages.

*2. Foundation Valuation ($350,000) and Derived In-Kind Values*

Defendants move to preclude the "Foundation Valuation"[4] and any related expert or lay testimony under Rules 401, 402, and 403. Defendants contend it is completely irrelevant and unreliable because Defendants never agreed to it, it involves a different program and company years later, there is no evidence that these later programs were similar to Defendants' program, and the Foundation Valuation is not reliable because it stems from collective thinking by the three Capital investment committee members with no experience in making such valuations. Defendants contend any minimal probative value of the Foundation Valuation (or values derived therefrom) is substantially outweighed by the danger of unfair prejudice, confusion, and misleading the jury.

Plaintiffs maintain that subsequent program valuations are relevant and probative of the 2020 Program's value. Plaintiffs cite testimony from their expert and Mr. Roselli to argue that evaluating similar accelerator programs is standard practice for a valuation of this kind. Further, Plaintiffs contend that roughly twenty participants have entered the program, thus establishing a reliable fair market value. Further, Plaintiffs contend the evidence will show that the programs referenced are substantially the same as Defendants' program, and COVID-19 did not disrupt the program's offerings or its value.

Defendants motion is **DENIED WITHOUT PREJUDICE**. On the current

[4] The "Foundation Valuation" is the monetary figure that a different accelerator program used when negotiating the terms of its participant agreement years after Class 12, beginning in the fall of 2022. (Doc. Nos. 88 at 2, 6; 74-6 at 2).

record, the Court finds future program valuations are relevant and do not warrant exclusion under Rule 403. Defendants may cross-examine Plaintiffs as to the dissimilarity of the COVID-era program to later programs. Further, Defendants may reraise their objection at a later time if so warranted. Nothing in this Order addresses whether an expert's reliance on such data meets the standards outlined in Rule 702.

*3. $600,000 Damages Figure and 6% Equity Interest Claim*

Defendants next ask the Court to prevent Plaintiffs from presenting the $600,000 damages figure and the 6% equity interest in Frideswide. Defendants argue Plaintiffs reach the $600,000 number through an arithmetical formula—$10M valuation of Frideswide × 6%—that has no relation to the SAFE terms, has not been established by any witness or document, and fails to reflect reality. Furthermore, Defendants argue the SAFE entitles CFV only to stock, not cash, upon an Equity Financing event.[5] And even then, CFV receives stock equal to the CFV Percentage multiplied by the Company Capitalization; it is not entitled to stock equivalent to the supposed market value of its 6% share, nor does it have the ability to sell the stock for cash. Lastly, Defendants argue there is no reason to believe the $600,000 figure

---

[5] The SAFE "issues to [CFV] the right to certain shares of [Cirrus Secure]'s Capital Stock, subject to the terms" of the SAFE. (Doc. No. 86-12 at 1). The SAFE provides various events that determine how CFV gets paid or receives stock. *Id.* at 1–2. Relevant to Defendants' argument is the "Equity Financing" provision. *Id.* at 1. "Equity Financing" generally means a formal fundraising round where Cirrus Secure raises capital by selling preferred stock to new investors for an aggregate amount exceeding $500,000. *Id.* at 4. When a qualified Equity Financing takes place, the SAFE automatically converts into shares of SAFE Preferred Stock. *Id.* These shares are equal to the Company Capitalization multiplied by the CFV Percentage. *Id.* The "Company Capitalization" "represents fully-diluted issued and outstanding equity shares as calculated as of immediately prior to the Equity Financing." *Id.* at 4. The SAFE provides a "CFV Percentage" of 6%. *Id.* at 3.

is relevant because there is no guarantee of the value of the stock at any given time.

As for the 6% equity interest, Defendants argue this figure is irrelevant for two reasons. First, the SAFE does not give CFV an immediate vested right to 6% stock in any participant who has signed the SAFE, and further, Frideswide did not sign the SAFE. Second, no Equity Financing event has occurred for either Cirrus Secure or Frideswide as of the date of Defendants' motion.

Plaintiffs contend that evidence regarding expected equity and company valuation is central to establishing damages under their fraud and securities claims. Specifically, the value of the stock Plaintiffs expected to receive corroborates the value of the in-kind consideration they provided in exchange. Plaintiffs assert that Brooks's representations of a $10M pre-money valuation to Plaintiffs and other investors (Doc. No. 1-4), coupled with the SAFE's 6% equity stake, provide the necessary framework to corroborate expected value. In response to Defendants' argument that Plaintiffs are only entitled to stock, Plaintiffs assert that argument fails because Defendants fraudulently offered stock in a worthless shell company, and Plaintiffs seek money damages for that fraud.

For reasons already discussed, the Court is not currently ruling as to the availability of certain damages for certain claims. Further, the Court finds this evidence is relevant. The 6% figure represented in the SAFE and Brooks's $10M pre-money valuation of Frideswide were part of the economic package that allegedly induced Plaintiffs to invest. That the equity never vested does not change this Court's analysis because it confuses contract-breach defenses with fraud elements. *See, e.g.,*

*Farmer v. Penske Truck Leasing Co., L.P.*, 927 S.E.2d 774 (N.C. Ct. App. 2026) ("Where a party alleges fraudulent inducement to enter into a contract, 'defenses based upon the fraudulently induced contract will not bar the claim.'"). Nor does Defendants' assertion that Frideswide was not a party to the SAFE persuade the Court to exclude this evidence. Frideswide's participation in the negotiations, or lack thereof, is a central issue in this case. For these reasons, these figures carry a probative value that is not substantially outweighed by unfair prejudice, and any confusion it may cause may be cured by a limiting instruction if needed and so requested. However, Plaintiffs may not argue that the SAFE conferred an immediate 6% ownership interest in Cirrus Secure or Frideswide, that it entitled CFV to receive $600,000, or that simple multiplication alone establishes the fair market value of CFV's contingent SAFE rights. Such a valuation must account for the SAFE's contingencies and must satisfy the applicable evidentiary requirements.

Accordingly, Defendants' motion is **GRANTED IN PART and DENIED IN PART**. Plaintiffs may introduce the text of the SAFE and Brooks's contemporaneous $10M pre-money valuation representations. However, Plaintiffs may not present the calculation or the $600,000 figure as described above.

*4. Frideswide Asset Purchase Agreement and Proceeds*

Finally, Defendants seek to exclude the 2021 Asset Purchase Agreement ("APA") between Frideswide and P23 Technologies, Inc., along with its purchase price and proceeds. They argue it post-dates the early 2020 transaction by nearly a year, has no bearing on whether 2019–2020 statements were false or relied upon, and acts as prejudicial "wealth evidence" designed to unfairly sway the jury by presenting

Frideswide as a company with substantial sale proceeds that can afford to pay damages in this case. Further, Defendants assert the figure is misleading because the bulk of the amount is a contingent revenue share, not purely money received.

Plaintiffs respond that the 2021 APA is relevant and admissible because it is critical to multiple liability and damage issues. For Plaintiffs' securities claims, Plaintiffs must show "a material misrepresentation or omission by the defendant" connected to the purchase or sale of a security. *Singer v. Reali*, 883 F.3d 425, 438 (4th Cir. 2018) (federal law); *see also Piazza v. Kirkbride*, 785 S.E.2d 695, 708 (N.C. App. 2016), *aff'd as modified*, 827 S.E.2d 479 (N.C. 2019) (same under NC law). Likewise, for Plaintiffs' fraud claims, Plaintiffs must establish "[f]alse representation or concealment of a material fact." *Head v. Gould Killian CPA Grp., P.A.*, 812 S.E.2d 831, 837 (N.C. 2018).

Specifically, Plaintiffs argue the APA proves the illegitimacy of the February 2020 Distribution Agreement (which was omitted from the APA assets); validates Cirrus Secure's true asset value and supports the representations Defendants made about that value, which could refer only to Frideswide; supports a showing of alter-ego status among Brooks's controlled entities; and supports Plaintiffs' claims for punitive damages regarding financial standing.

Defendants' motion to exclude the 2021 APA and its proceeds is **GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART**. The Court finds that based on Plaintiffs' assertions, certain portions of the APA are likely relevant under Rules 401 and 402, for example, to test whether Frideswide and Cirrus Secure operated as

alter egos, whether the February 2020 Distribution Agreement was a legitimate contemporaneous instrument, and to support Plaintiffs' punitive damages claims regarding financial standing.[6] However, the Court finds that admitting the entire APA would violate Rule 403, nor is the entirety of the APA relevant. Accordingly, Plaintiffs may elicit testimony regarding the APA and seek to admit redacted or select provisions of the APA for the above purposes, including the total purchase price, if otherwise admissible. Defendants may reraise their objections at the appropriate time, if so warranted. Likewise, the Court may consider a limiting instruction if needed and requested by Defendants to ensure the correct consideration of the evidence.

## III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiffs' Motions in Limine (Doc. No. 76) are **GRANTED IN PART and DENIED IN PART** as follows:

    a. Plaintiffs Motion to Exclude evidence or references concerning prior litigation involving Daniel Rosselli is **GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART**;

    b. Plaintiffs' Motion to Exclude evidence concerning Mr. Roselli's or Mr. Clarkson's decisions to defer compensation during the COVID-19 pandemic is **DENIED**;

---

[6] In evaluating punitive damages, the trier of fact may consider "[t]he defendant's ability to pay punitive damages, as evidenced by its revenues or net worth." *Howald v. Herrington*, No. 1:21-CV-00059-MR-WCM, 2023 WL 1827856, at *5 (W.D.N.C. Feb. 8, 2023) (quoting N.C. Gen. Stat. § 1D-35).

c. Plaintiffs' Motion to Exclude arguments and evidence concerning Defendants' dismissed breach-of-contract counterclaims is **GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART**; and

d. Plaintiffs' Motion to Exclude evidence concerning Plaintiffs' compensation agreements with counsel is **GRANTED**.

2. Defendant's Motions in Limine (Doc. No. 85) are **GRANTED IN PART and DENIED IN PART** as follows:

a. Defendants' Motion to exclude the valuation of in-kind/non-cash benefits associated with the Accelerator Program is **DENIED WITHOUT PREJUDICE**;

b. Defendants' Motion to Exclude the Foundation Valuation ($350,000) and derived in-kind values is **DENIED WITHOUT PREJUDICE**;

c. Defendants' Motion to Exclude the $600,000 damages figure and 6% equity interest claim is **GRANTED IN PART and DENIED IN PART**; and

d. Defendants' Motion to Exclude the Frideswide Asset Purchase Agreement and proceeds is **GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART**.

Signed: October 26, 2026

**SO ORDERED.**

Matthew E. Orso
United States District Judge