UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:24-CV-00752-MEO-MTO

| | |
|---|---|
| CAROLINAS FINTECH VENTURES, LP, AND REV TECH LABS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>FRIDESWIDE SQUARE, INC., CIRRUS SECURE, INC., AND DAVID BROOKS,<br><br>Defendants. | **MEMORANDUM & ORDER** |

**THIS MATTER** is before the Court on Defendants' Motion in Limine to Exclude the Expert Testimony of Nicholas R. Harris (Doc. No. 74) and Plaintiffs' Motion in Limine to Exclude the Rebuttal Expert Testimony of Ronald Seigneur (Doc. No. 78). For the reasons set forth below, the Court will grant Defendants' motion and deny as moot Plaintiffs' motion.

## I. BACKGROUND

The underlying litigation involves claims between Plaintiffs Rev Tech Labs, LLC ("Rev Tech") and Carolinas Fintech Ventures, LP ("CFV") and Defendants Cirrus Secure, Inc. ("CSI"), Frideswide Square, Inc. ("Frideswide"), and David Brooks. To support their claims regarding the value of consideration exchanged for a SAFE investment, Plaintiffs retained forensic accountant and valuation expert Nicholas R. Harris. Mr. Harris opined that Plaintiffs provided approximately $340,000 in total consideration, consisting of $40,000 in cash and roughly $300,000 of in-kind

consideration derived from participation in Rev Tech's Accelerator Program. Mr. Harris calculated the in-kind value by utilizing a stated value from a subsequent participant agreement, applying an inflation-adjustment factor, and corroborating the figure by applying market-based revenue multiples to the expected revenue of Frideswide.

To counter Mr. Harris's conclusions, Defendants retained Ronald Seigneur, a Certified Public Accountant and business valuation expert with nearly forty years of appraisal experience, to review and critique Mr. Harris's report. In his expert declaration, Mr. Seigneur criticized Mr. Harris's methodology, asserting that Mr. Harris relied on self-declared values, performed inadequate due diligence, and engaged in an improper comparison of revenue figures.

## II. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. *United States v. Wilson*, 484 F.3d 267, 274–75 (4th Cir. 2007). Under Rule 702, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the evidentiary gatekeeper, the Court must ensure that the proponent of expert testimony has established each of Rule 702's requirements by a preponderance of the evidence. *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283–84 (4th Cir. 2021); *see also* Fed. R. Evid. 104(a); *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993); *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

In applying Rule 702, the Court serves as a "gatekeeper" to assess if "the opinion is relevant to the facts at issue" and to examine "whether the reasoning or methodology underlying the expert's proffered opinion is reliable." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999) (citing *Daubert*, 509 U.S. at 592); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (noting the district court serves as a gatekeeper to assess whether the proffered evidence is "relevant" and "reliable"). Importantly, however, the gatekeeper function does not require that the Court "determine that the proffered expert testimony is irrefutable or certainly correct" because expert testimony is "subject to testing by 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006) (quoting *Daubert*, 509 U.S. at 596).

In short, there is no "mechanistic test for determining the reliability of an expert's proffered testimony; on the contrary, 'the test of reliability is flexible' and 'the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.'"

*Peters-Martin v. Navistar Int. Trans. Corp.*, 410 Fed. App'x. 612, 617 (4th Cir. 2011) (quoting *Wilson*, 484 F.3d at 274). The nature of the expert testimony is a critical factor in that inquiry.

Federal Rule of Civil Procedure 26 permits parties to submit expert testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). "Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party." *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004). When offering rebuttal expert testimony, the expert has "no burden to produce models or methods of their own; they need only attack those of the [opposing party's] experts. At a minimum, however, rebuttal experts must meet *Daubert*'s threshold standards regarding the qualifications of the expert, sufficiency of the data, reliability of the methodology, and relevance of the testimony." *Scott v. Chipotle Mexican Grill*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (citation omitted).

## III. DISCUSSION

Defendants move to strike Plaintiffs' expert, Nicholas R. Harris. Likewise, Plaintiffs move to strike the testimony of Ronald Seigneur, who is offered as a rebuttal expert to Mr. Harris. The Court will address Defendants' motion first.

### A. Nicholas R. Harris

Plaintiffs retained Mr. Harris as the valuation expert to assess the in-kind benefits of the Class 12 Accelerator Program. Defendants move to exclude the entirety of Mr. Harris's expert testimony on four grounds: (1) Mr. Harris's testimony

is not relevant; (2) Mr. Harris is not qualified to opine on the specific valuation at issue; (3) Mr. Harris's opinions are not reliable; and (4) Mr. Harris's methodology is unreliable. Because the Court will grant the motion to exclude Mr. Harris on the basis that his opinion does not satisfy the requirements of Rule 702(b), the Court will address only that argument.

Defendants argue that Plaintiffs cannot establish the reliability of Mr. Harris's opinions under *Daubert* and Rule 702 for four reasons: (1) Mr. Harris's methodology is unreliable; (2) Mr. Harris's opinion rests on inadequate and incorrect factual foundations; (3) Mr. Harris parroted Plaintiffs' counsels' opinions and passed them off as his own expert opinion; and (4) Mr. Harris cherry-picked inputs for a results-driven analysis.

*1. Mr. Harris's Methodology*

Plaintiffs explain the three steps Mr. Harris's methodology followed: (1) start with a market indication of value; (2) adjust for inflation; and (3) test and corroborate the resulting figure. Mr. Harris testified that this is a generally accepted methodology for valuation. (Doc. No. 74-3 at 139:7–14). Mr. Harris used this methodology to arrive at an estimated in-kind value of $300,000 for the 2020 Accelerator Program. When adding the $40,000 cash consideration, this value totals $340,000.

First, Mr. Harris started with a baseline. To do so, Mr. Harris used a later program valuation (the "Foundation Valuation") of $350,000. This is the non-cash program value that a related entity not a party to this litigation, Rev Tech Labs Foundation, began inserting into its standard participant agreements in 2023. Mr.

Harris relied on this number because "Plaintiffs' Accelerator Program participants have agreed to that value since Plaintiffs added this provision to their participation agreement in or around 2023." (Doc. No. 82-6 at 14).

Second, Mr. Harris adjusted the 2023 Foundation Valuation for inflation to discount it back to 2020, the year Defendants participated in the Accelerator Program. Mr. Harris based this adjustment on producer price inflation for management consulting services. This adjusted the baseline figure down to approximately $300,000 for 2020. Mr. Harris observed that this "suggests that the value of Plaintiffs' total consideration is approximately $340,000 including $40,000 of cash consideration." *Id.* at 14.

Third, to test and corroborate the reasonableness of the $300,000 estimated value of Plaintiffs' in-kind consideration, Mr. Harris used a formula where cash consideration ($40,000) plus in-kind value equaled the value of the 6% equity interest. To do this, Mr. Harris did not calculate a value range for the stock that was given in connection with the SAFE, that is, CSI's stock. Rather, Mr. Harris calculated a value range for Frideswide's stock, reasoning that CFV thought it was receiving Frideswide stock through the SAFE. Using market-based revenue multiples based on Defendants' valuations and growth projections, Mr. Harris estimated that a 6% equity interest in Frideswide ranged from $149,502 to $678,231. Because his total consideration estimate of $340,000 fell within this equity-valuation range, Mr. Harris concluded his figure was corroborated and reasonable.

*2. The Starting Figure of $350,000*

At the outset, the Court finds that Mr. Harris is qualified as an expert in his field of study relevant to this litigation. As to the merits of Defendants' motion, the Court first looks at Mr. Harris's reliance on the data provided to him by Plaintiffs, that is, the starting point at step one—$350,000.

Mr. Harris starts with a number provided by Plaintiffs that a different but related entity of Plaintiffs used for a different program (the "Foundation Program") in 2023, years after the 2020 Class 12 Program at issue. To give him that number, he understood Plaintiffs "looked at the items that are offered, the program itself, and determined what they believe to be the value of" the Foundation Program. (Doc. No. 74-3 at 67:22–25). Mr. Harris relied on that number based on his understanding that the Foundation Program was not materially different than the Class 12 Program and that none of the programs changed materially from the years 2020–2023. *See generally* (Doc. No. 74-3 at 40:2–20). Further, his report states his understanding that "Plaintiffs' Accelerator Program participants have agreed to that value since Plaintiffs added this provision to their participation agreement in or around 2023." (Doc. No. 82-6 at 14). Mr. Harris provides no other analysis, support, or reasoning for the $350,000 figure.

As to this figure, Defendants argue Mr. Harris took no steps to independently determine the value of attending an accelerator program, much less the Class 12 Program at issue in this case. They argue that instead, Mr. Harris accepted, without any further analysis, the Foundation Valuation based on his understanding that the

Class 12 Program was not materially different from the Foundation Program and that neither program substantially changed from 2020 to 2023. (Doc. No. 74-3 at 37:18–40:16). They further argue that Mr. Harris did nothing to address the effect, if any, of COVID-19 on the Class 12 Program.

*3. Sufficient Facts and Data under Rule 702*

Under Federal Rule of Evidence 702, expert testimony is admissible only if "the proponent demonstrates to the court that it is more likely than not that," among other things, "the testimony is based on sufficient facts or data." Fed. R. Evid. 702(b). "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. And an expert may rely on facts or data that are not admissible if experts in the field would reasonably rely on them in forming an opinion on the subject. *Id.* "[Q]uestions regarding the factual underpinnings of the [expert witness's] opinion affect the weight and credibility of the witness'[s] assessment, not its admissibility." *Sommerville v. Union Carbide Corp.*, 149 F.4th 408, 423 (4th Cir. 2025), *cert. denied*, 146 S. Ct. 2677 (2026).[1] And "[n]othing in Rule 702 requires an expert witness to 'validate' data." *Id.* (citing Fed. R. Evid. 702). Indeed, "[t]rained experts commonly extrapolate from existing data." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

But that principle applies only once the proponent has shown that the opinion rests on a sufficient basis; disputes about the accuracy and details of the underlying

[1] This Court is bound by *Sommerville*. But *Sommerville* does not relieve the proponent of its burden of showing that the expert's opinion rests on sufficient facts or data. Fed. R. Evid. 702(b).

facts then go to weight. Whether the basis is sufficient in the first place, however, remains a threshold question for the Court. *See* Fed. R. Evid. 702(b). "An expert cannot simply parrot his client's findings or calculations and then pass that data off as his own expert opinion." *Cap. Concepts, Inc. v. Mountain Corp.*, 936 F. Supp. 2d 661, 672 (W.D. Va. 2013). And "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co.*, 522 U.S. at 146; *accord O'Connor v. Fairfax Taxi, Inc.*, 188 F.4th 336, 354 (4th Cir. 2026); *see also Tyger Const. Co. v. Pensacola Const. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) ("An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record.").

*4. Analysis Under Rule 702(b)*

The Court agrees with Defendants that Mr. Harris's reliance on the $350,000 figure, without more, "merely cloaks unexamined assumptions in the authority of expert analysis." *Endless River Techs., LLC v. TransUnion, LLC*, No. 23-3087, 2025 WL 233659, at *8 (6th Cir. Jan. 17, 2025) (unpublished) (finding that a "wholesale adoption of [the plaintiff's] profit projection without apparently even evaluating the bases for those estimates cannot stand") (internal quotation marks omitted).

Mr. Harris observed that participants had agreed to that 2023 Foundation Valuation, and Plaintiffs assured him that the Foundation Program associated with that figure was substantially similar to the 2020 Program at issue. His report

provides no indication of how Plaintiffs arrived at the $350,000 starting point for his valuation, whether he tested that figure for reliability as a baseline value, or what calculations, if any, he made to vet that initial $350,000 figure.[2] Plaintiffs' argument that Mr. Seigneur agreed to starting with that figure mischaracterizes his deposition testimony. Mr. Seigneur stated in his deposition that the $350,000 amount is "a reasonable place to start" and he "[does]n't take issue with [Mr. Harris] considering it." (Doc. No. 82-3 at 68:17–24). Mr. Seigneur explained, however, that "it wouldn't necessarily be the determining data point, but it would be a factor," and that it's a "self-declared value" that isn't right "just because the parties agreed on it." (Doc. No. 79-2 at 62:6–8). "[T]he issue is that there is insufficient information available about those datasets to ensure their reliability." *Alford v. NFL Player Disability & Survivor Benefit Plan*, No. CV JRR-23-358, 2025 WL 3274428, at *14 (D. Md. Nov. 24, 2025).

Therefore, Plaintiffs have failed to meet their burden as to whether the $350,000 figure rests on a sufficient factual basis under Fed. R. Evid. 702(b). As a result, the Court must exclude Mr. Harris's testimony for that reason, without consideration of his methods' reliability or whether he reliably applied them to the

---

[2] The Fourth Circuit's decision in *Sommerville* is distinguishable. There, the expert entered the defendant's own reported emissions data into an established EPA air-modeling system, and the challenge went to the choice and quality of that data. *See Sommerville*, 149 F.4th at 425 (concluding "the district court again conflated admissibility with the weight a factfinder might attribute Dr. Sahu's testimony based on his choice of data"). Here, no established model or method validates the starting figure, and the only support for it is Plaintiffs' own assurances and the fact that around 20 others did not dispute the alleged value of a later program offered by a different but related entity. The question is whether Plaintiffs have shown any reliable basis for the figure, not whether an existing basis is imperfect.

facts of this case.[3]

Nothing in this Order prevents Plaintiffs from presenting documentary evidence or lay testimony as to the later values of the Accelerator Program or other substantially similar programs.

### B. Ronald Seigneur

Mr. Seigneur is a CPA and business valuation expert with Seigneur Gustafson LLP, a licensed CPA firm in Colorado. Defendants retained Mr. Seigneur to rebut Mr. Harris's report. Mr. Seigneur offers several criticisms of Mr. Harris's valuation. Nevertheless, the exclusion of Mr. Harris's opinion leaves nothing for Mr. Seigneur to rebut. Mr. Seigneur was retained to review and critique Mr. Harris's report. He did not offer any independent opinions on the value of the Class 12 Program. Accordingly, the Motion to Exclude Mr. Seigneur will be denied as moot.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion in Limine to Exclude the Expert Testimony of Nicholas R. Harris (Doc. No. 74) is **GRANTED**; and

[3] While Mr. Harris noted at deposition that he later performed certain corroborating calculations, those calculations are not in his report, and no supplemental report has been filed. Such calculations would be material to the Rule 702 inquiry and cannot simply be referenced in a deposition without inclusion in an expert report or supplement. Accordingly, the Court declines to consider those calculations in its analysis. *See Prassas Cap., LLC v. Blue Sphere Corp.*, No. 3:17-CV-131-RJC-DCK, 2019 WL 2881560, at *3 (W.D.N.C. July 3, 2019) (quoting *U.S. Bank N.A. v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 132 (S.D.N.Y. 2015) ("It is well-established that 'expert testimony exceeding the bounds of the expert's report is excludable pursuant to Rule 37(c)(1).'")); *accord S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 (4th Cir. 2003).

2. Plaintiffs' Motion in Limine to Exclude the Rebuttal Expert Testimony of Ronald Seigneur (Doc. No. 78) is **DENIED AS MOOT**.

**SO ORDERED.**

Signed: October 26, 2026

Matthew E. Orso
United States District Judge